ORIGINAL

ORIGINAL

FILED
JUN 20 2006
U.S. COURT OF FEDERAL CLAIMS

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| A&D FIRE PROTECTION, INC.,<br>Plaintiff,<br>v.<br>UNITED STATES,<br>Defendant. | USCFC NO. 06-467-C<br>APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION: POINTS AND AUTHORITIES: DECLARATION OF WILLIAM L. BRUCKNER<br>(BID PROTEST) |

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and RUSCFC 65, Plaintiff A&D Fire Protection, Inc, ("A&D") moves this Court for a Temporary Restraining Order, ("TRO"), enjoining and restraining Defendant, General Services Administration, as an agency of the United States Government, and the Contracting Officer at U.S. General Services Administration, Region 9, Los Angeles, CA from issuing a Notice to Proceed (an "NTP"), on Contract No. GS-09P-98-KTD-0046 (Project No. RCA 13863) (the "Contract"), Design/Build Services for the Replacement of the Fire Alarm System for the Laguna Niguel Federal Building (hereinafter the "SOLICITATION")., to Hernandez Construction Corporation., ("CADDELL"), pending the outcome of A&D's post-award bid protest. A&D is concurrently filing a Complaint for Declaratory Relief on said Solicitation.

In the alternative and if the GSA has already issued an NTP to HERNANDEZ, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and RUSCFC 65, Plaintiff A&D Fire Protection, Inc, ("A&D") moves this Court for a Temporary Restraining Order, ("TRO"), enjoining and restraining Defendant, General Services Administration, as an agency of the United States Government, and the Contracting Officer at U.S. General Services Administration, Region 9, Los Angeles, CA from continuing to allow HERNANDEZ to proceed with the work on Contract No. GS-09P-98-KTD-0046 (Project No. RCA 13863), Design/Build Services for the Replacement of the Fire Alarm System for the Laguna Niguel

Federal Building (hereinafter the "SOLICITATION")., to Hernandez Construction Corporation., ("CADDELL"), pending the outcome of A&D's post-award bid protest. A&D is concurrently filing a Complaint for Declaratory Relief on said Solicitation.

Additionally, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and RUSCFC 65, A&D, moves this Court for a preliminary injunction, ("PI"), pursuant to a hearing set by this Court as to whether the GSA, as an agency of the United States Government and the Contracting Officer at U.S. General Services Administration, Region 9, Los Angeles, CA, should be enjoined and restrained from issuing a Notice to Proceed on Solicitation No. F41622-99-R-0011, pending this Court's adjudication of A&D's action for Declaratory Judgment.

Additionally, and in the alternative, if an NTP has been already issued to HERNANDEZ, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and RUSCFC 65, A&D, moves this Court for a preliminary injunction, ("PI"), pursuant to a hearing set by this Court as to whether the GSA, as an agency of the United States Government and the Contracting Officer at U.S. General Services Administration, Region 9, Los Angeles, CA, should be enjoined and restrained from allowing HERNANDEZ to proceed with the work on Solicitation No. F41622-99-R-0011, pending this Court's adjudication of A&D's action for Declaratory Judgment.

It is A&D's position based upon the holding on Stratos Mobile Networks USA, LLC. v. the United States, et al., 1999 WL 788639 (Fed. Cl.), that the GSA conducted a best value valuation that departed from the basis for evaluation called out in the solicitation, thereby depriving it not only of a fair opportunity to compete, but also of recognition as the solicitation's best value. The GSA improperly rejected the best value proposal in favor of a proposal that revealed itself as a better value only when examined in light of factors different from those set forth in the solicitation.

This Application is made on the ground that immediate and irreparable injury will result to A&D unless the activity described above is enjoined pending adjudication of A&D's action for Declaratory Judgment. This Application will be based on this Application, Memorandum of Points and Authorities, the Statement of Plaintiff's attorney, William L. Bruckner, Affidavits

and supporting evidence attached hereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.

### STATEMENT OF THE LAW

The Court of Federal Claims in W & D Ships Deck Works, Inc. v. United States, 39 Fed. Cl. 638 (1997), held that:

> When deciding if a TRO is appropriate in a particular case, a court uses the same four-part test applied to motions for a preliminary injunction. Cincom Sys., Inc. v. United States, 37 Fed. Cl. 266, 268 (1997); National Football League Properties, Inc. v. Coniglio, 554 F.Supp. 1224, 1225 (D.D.C.1983). Plaintiff must show: (1) that the plaintiff will suffer a specific irreparable injury if performance is not enjoined; (2) that the plaintiff is likely to succeed on the merits of the claim; (3) that the harm to plaintiff outweighs any harm to defendant; and (4) that granting the requested relief serves the public interest. Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed.Cir.1983). For the purpose of ruling on this motion for a TRO, the court has assumed all facts alleged in the complaint to be true, as in ruling on a motion to dismiss. See Neitzke, 490 U.S. at 326-27, 109 S.Ct. at 1832-33.

### B.

### STATEMENT OF THE FACTS

On April 26, 1999, the GSA issued Request for Proposal for Contract No. GS-09P-98-KTD-0046 (Project No. RCA 13863), requesting proposals for a "best value" procurement for Design/Build Services for the Replacement of the Fire Alarm System for the Laguna Niguel Federal Building (hereinafter the "SOLICITATION"). The SOLICITATION required a two phase selection process wherein in Phase I selected contractors who were pre-qualified to submit proposals. A&D and HERNANDEZ were among pre-selected contractors that submitted proposals. *Attachment G.* ("*Attachment*" refers to an Attachment to the Declaration of William L. Bruckner)

A&D and HERNANDEZ submitted proposals on the Price and Non-Price Factors. After a period of evaluation of said proposals, and even though A&D's proposal was approximately $244,100 lower that the HERNANDEZ proposal, HERNANEZ was awarded the SOLICITATION on or before January 9, 2006. *Attachment G.* A&D received the notice of

award on January 10, 2006. *Attachment G.* A&D's Price was $244,100 lower than the HERNANDEZ Price.

A&D requested a debriefing on January 10, 2006 and was informed on January 10, 2006 that a briefing would be scheduled once bonds had been provided by HERNANDEZ. Attachment G. When GSA did not respond A&D again requested a debriefing on March 8, 2006. *Attachment G.*

On or about March 31, 2006, A&D received a debriefing by Ms. Sheryl Leverette, the Contracting Officer, and Mr. Brian Stilley, an individual who identified himself as the head of the Technical Evaluation Team. In a letter dated May 11, 2006 A&D summarized the GSA debriefing. *Attachment I.*

The Source Selection Factors are Price and Non-Price. Both Source Selection Factors are equal weight since, other than the three sub factors within Non-Price there is nothing to indicate any other weight to be given the two main Source Selection Factors. *Attachment C.*

The following reasons were provided by Mr. Stilley to A&D as the reasons HERNANDEZ's proposal scored higher than A&D's sufficiently to award HERANDEZ the Contract in spite of the substantially lower Price of A&D's proposal. *Attachment I.*

A. Quality of Equipment and Materials – Mr. Stilley stated that A&D had been marked down for submitting on a panel that did not meet the contract requirements per section 16723 and also informed Mr. Ballow that it was the EST QS 1 Control Panel that did not meet the contract requirements. This was the only item that Mr. Stilley or Mrs. Leverette provided for A&D's score being marked down in this factor.

During the March 31, 2006 debriefing, A&D asked Mr. Stilley to open his copy of A&D's technical proposal and directed Mr. Stilley to the exact location where he could find the primary panel product data sheets for the EST 3 Control Panel which does meet spec section 16723 and all contract requirements. A&D explained the reason for the EST Q S 1Control Panel being submitted along with the EST 3 Control Panel was due to the fact that the A /C Building is located adjacent to and across the street from the main facility and there are no conduits to the A/C Building from the Main Facility. The A/C Building design requirements do

not require an EST-3 Addressable - Fire Alarm Control Panel, as it does for the Main Facility. Per NFPA 72. The A/C Building can use an Addressable or a Conventional Fire Alarm System since the stand-alone building only requires Horn/Strobe notification devices. The QS-1 is a Class A / Class B Fire Alarm Control Panel and was designed exclusively to meet the latest fire alarm market requirements for such an application, and meets all NFPA 72 requirements. The QS-1's dual line dialer, support contact ID and 4/2 format notify the EST 3 system in the main building in the event of an alarm condition, thus meeting the contract requirements for this building (please see attachment A, Fire Alarm Riser Diagram).

Thus, if the scoring of this sub-factor was the only sub-factor that had negatively affected A&D's technical score for this Non-Price factor, then after receiving the facts A&D's score should have resulted in a 25 out of 25 for this sub-factor as A&D met all other submission requirements for this sub-factor as detailed by the Instructions to Bidders and the fact that no other deficiencies were noted by GSA.

The second reason provided by Mr. Stilley to A&D as one of the reasons HERNANDEZ's proposal scored higher than A&D's sufficiently to award HERANDEZ the Contract in spite of the substantially lower Price of A&D's proposal involved the Installation Plan. *Attachments C, E & I.*

A. Installation Plan / Phasing Plan – Mr. Stilley explained that A&D had been marked down for not including topics or elements in A&D's installation plan regarding the design portion of the project. Mr. Stilley also explained that two other factors had negative effects on A&D's technical score; lack of information and/or detail, and for not providing a bar graph critical path schedule.

In response A&D asked the GSA debriefers to follow along with the Instructions To Bidders, section 00200, pages 5 and 6 as well as A&D's Installation Plan/Phasing Plan. A&D illustrated where each and every element required by the Instructions to Bidders, page 6, Installation Plan had been thoroughly covered in A&D's technical proposal A&D asked Mr. Stilley to explain where in the Instructions To Bidders or contract documents that there is a technical submittal requirement for any of the given reasons for A&D's score being marked

down. Neither Mr. Stilley nor Ms. Leverette had a response as it was abundantly clear that the GSA had not read A&D's submission and improperly scored this sub-factor.

Thus, after clearing up GSA's misinterpretation of the technical requirements and walking GSA through each and every step of the technical confirming that every item required for this factor was met, A&D's score for this factor should have been corrected and changed to a 25 out of 25.

The third reason provided by Mr. Stilley to A&D as one of the reasons HERNANDEZ's proposal scored higher than A&D's sufficiently to award HERANDEZ the Contract in spite of the substantially lower Price of A&D's proposal involved the Contractor Qualification/ Past Performance sub-factor. *Attachments C, E & I.*

A. Contractor Qualification / Past Performance – Mr. Stilley indicated that A&D's score for this factor had been marked down due to a statement from one of A&D's references that there were several trouble calls with the system A&D installed for the client. This was the only reason given by Mr. Stilley for this sub-factor score being negatively affected.

In response to the third issue raised by Mr. Stilley, A&D asked Mr. Stilley if he was aware of whether or not Mr. Gazi had been asked if he was satisfied with A&D's performance on the project and if we would like to do business with them again. Mr. Stilley stated that he did not have that information, as he did not conduct the reference check. A&D then asked Mr. Stilley if he knew whether Mr. Gazi had been asked to explain the source of the trouble calls. Mr. Stilley stated that he did not have that information, as he did not conduct the reference check. A&D then explained that the trouble calls were the result of an existing leak in the client's roof directly over the fire alarm control panel that was causing the trouble calls and that that had nothing to do with A&D. A&D explained that when Mr. Gazi was contacted by A&D Mr. Gazi informed A&D that he had given A&D a good reference.

Consequently, A&D's score for this factor should have been rescored. As this was again the only item that GSA noted as being deficient for this sub- factor, A&D should receive 25 out of 25 for this factor having met all of the requirements for this factor.

In Mrs. Leverette's email dated April 25, she states that the evaluators' re-scored A&D's proposal regarding the two electrical panels submitted for the Quality of Equipment and Material Mrs. Leverette goes on to state that after calculating the new scores, A&D's overall ranking was second. Mrs. Leverette failed to address the other two items that were incorrectly scored. The Installation Plan / Phasing Plan and the Contractor Qualification / Past Performance factors should have been re-scored as well.

A&D has requested a copy of the re-scored breakdown but GSA has refused to provide A&D the requested information. *Attachment I & J.*

GSA advised A&D that between Price and Non-price Factors GSA based its award criteria based on a 25% Price and 75% Non-price evaluation, which is 25 points for the Price Factor and 25 points for each of the Non-Price sub factors. This criteria is not stated in the Source Selection Factors. From the Bid Form both Price and Non-price Factors are of equal weight unless a different weighting is stated. Therefore, if the selection of HERNANDEZ was based upon a weighting of 25% to Price and 75% to Non-price then the bidders did not know the basis of the selection.

**C.**

**ARGUMENT**

**A&D IS ENTITLED TO THE ISSUANCE OF A TEMPORATY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

The crux of A&D's claim is that the GSA unreasonably denied A&D the opportunity to fairly participate in the bid process for Contract No. GS-09P-98-KTD-0046 (Project No. RCA 13863), Design/Build Services for the Replacement of the Fire Alarm System for the Laguna Niguel Federal Building. A&D sets forth basic concepts of law and facts which show that (1) A&D will suffer irreparable injury if the GSA is not enjoined; (2) A&D is likely to succeed on the merits of its claim; (3) the harm to A&D outweighs any harm to the GSA; and (4) granting of the requesting relief serves the public interest.

//

//

1. **A&D Will Suffer Severe Harm If A Temporary Restraining Order And A Preliminary Injunction Is Not Issued**

A&D will suffer irreparable injury unless the Temporary Restraining Order and Preliminary Injunction sought in this case are immediately granted. Monetary damages will not be sufficient to address this harm. The denial of the right to have its bid fairly and lawfully considered constitutes irreparable harm. Additionally, the loss of a major contract is considered to cause irreparable harm when the bid is not fairly and lawfully considered. Dairy Maid Dairy Inc. v. United States, DC Va., No. 2:93cv260, November 5, 1993 (Memorandum Opinion).

Alternatively, if the GSA's Notice to Proceed is issued and the Award to HERNANDEZ is permitted to actually mobilize and begin performing or if an NTP has already been issued continue performance, this Court might ultimately determine that, although the award should have been made to A&D, it would now be too costly to disturb the incorrect award to awardee precisely because of the excessive cost to the Government of having awardee, begin performance, and demobilize, and then having A&D mobilize.

If preliminary injunctive relief is not granted the GSA will be allowed to have HERNANDEZ mobilize and commence performance or to continue performance on the contract, thus diminishing the likelihood that this Court will recommend the appropriate corrective action if it finds that the Contract was improperly awarded. Without injunctive relief from this Court, A&D may effectively be precluded from meaningful relief and will suffer irreparable harm as a direct result of the GSA's deviation from the SOLICITATION's guidelines and procedures. A&D will suffer irretrievable money losses as well, if A&D is unfairly deprived of the opportunity to fully and fairly litigate its bid protest as Congress determined and intended when it enacted the statutory framework. Art-Metal - USA, Inc. v. Solomon, 473 F.Supp. 1, 4 n.4 (D.D.C. 1978); Pan American World Airways. Inc. v. Marshall, 439 F.Supp. 487, 497 (S.D.N.Y.1977); see also Tri-State Generation v. Shoshone River Power. Inc., 805 F.2d 351, 355 (10th Cir.1986) (where plaintiff cannot collect monetary damages, harm is irreparable.).

Absent the granting of the injunction, A&D will be effectively deprived of a remedy for

the GSA's violation of A&D's clear right, under applicable regulations, to be allowed to participate fairly in the bid process. As a result of the GSA's arbitrary and capricious conduct, A&D faces the loss of the profits which are not recoverable. A contractor seeking damages from the award of a contract to a competitor in the Court of Federal Claims can only recover damages which do not exceed the bid preparation costs. The Court of Federal Claims cannot award recovery of lost profits or of the losses caused by liquidation of assets. Keco Indus. v. United States, 192 Ct.Cl. 773, 785, 428 F.2d 1233,1240 (1970); see also S&W Mechanical v. City of Homerville, 682 F.Supp. 546, 547-548 (M.D. Ga. 1988).

As set forth at greater length in the Complaint, the effect of the GSA's action is to impose irreparable harm upon A&D and to deprive A&D of a meaningful opportunity to participate in the aforementioned bid process. The denial of the right to have its bid fairly and lawfully considered constitutes an irreparable injury as does the loss of a major contract. Additionally, A&D's remedy at law is clearly inadequate. Absent an injunction and a temporary restraining order, A&D would effectively lose the contract.

2. **A&D Will Succeed On The Merits Of Its Claim**

A&D will succeed on the merits of its claim because the GSA clearly in direct violation of the SOLICITATION provisions, failed to comply with the evaluation procedure by not properly scoring A&D's proposal as the best value.

The following specific facts are evidence of the injustice A&D has been subjected to by the GSA and why A&D will prevail on the merits of its claim.

The following reasons were provided by Mr. Stilley to A&D as the reasons HERNANDEZ's proposal scored higher than A&D's sufficiently to award HERANDEZ the Contract in spite of the substantially lower Price of A&D's proposal. *Attachment I.*

B. Quality of Equipment and Materials – Mr. Stilley stated that A&D had been marked down for submitting on a panel that did not meet the contract requirements per section 16723 and also informed Mr. Ballow that it was the EST QS 1 Control Panel that did not meet the contract requirements. This was the only item that Mr. Stilley or Mrs. Leverette provided for A&D's score being marked down in this factor.

During the March 31, 2006 debriefing, A&D asked Mr. Stilley to open his copy of A&D's technical proposal and directed Mr. Stilley to the exact location where he could find the primary panel product data sheets for the EST 3 Control Panel which does meet spec section 16723 and all contract requirements. A&D explained the reason for the EST Q S 1Control Panel being submitted along with the EST 3 Control Panel was due to the fact that the A /C Building is located adjacent to and across the street from the main facility and there are no conduits to the A/C Building from the Main Facility. The A/C Building design requirements do not require an EST-3 Addressable - Fire Alarm Control Panel, as it does for the Main Facility. Per NFPA 72. The A/C Building can use an Addressable or a Conventional Fire Alarm System since the stand-alone building only requires Horn/Strobe notification devices. The QS-1 is a Class A / Class B Fire Alarm Control Panel and was designed exclusively to meet the latest fire alarm market requirements for such an application, and meets all NFPA 72 requirements. The QS-1's dual line dialer, support contact ID and 4/2 format notify the EST 3 system in the main building in the event of an alarm condition, thus meeting the contract requirements for this building (please see attachment A, Fire Alarm Riser Diagram). Attachment I.

Thus, if the scoring of this sub-factor was the only sub-factor that had negatively affected A&D's technical score for this Non-Price factor, then after receiving the facts A&D's score should have resulted in a 25 out of 25 for this sub-factor as A&D met all other submission requirements for this sub-factor as detailed by the Instructions to Bidders and the fact that no other deficiencies were noted by GSA.

The second reason provided by Mr. Stilley to A&D as one of the reasons HERNANDEZ's proposal scored higher than A&D's sufficiently to award HERANDEZ the Contract in spite of the substantially lower Price of A&D's proposal involved the Installation Plan. *Attachments C, E & I.*

B. Installation Plan / Phasing Plan – Mr. Stilley explained that A&D had been marked down for not including topics or elements in A&D's installation plan regarding the design portion of the project. Mr. Stilley also explained that two other factors had

negative effects on A&D's technical score; lack of information and/or detail, and for not providing a bar graph critical path schedule.

In response A&D asked the GSA debriefers to follow along with the Instructions To Bidders, section 00200, pages 5 and 6 as well as A&D's Installation Plan/Phasing Plan. A&D illustrated where each and every element required by the Instructions to Bidders, page 6, Installation Plan had been thoroughly covered in A&D's technical proposal A&D asked Mr. Stilley to explain where in the Instructions To Bidders or contract documents that there is a technical submittal requirement for any of the given reasons for A&D's score being marked down. Neither Mr. Stilley nor Ms. Leverette had a response as it was abundantly clear that the GSA had not read A&D's submission and improperly scored this sub-factor. *Attachment I.*

Thus, after clearing up GSA's misinterpretation of the technical requirements and walking GSA through each and every step of the technical confirming that every item required for this factor was met, A&D's score for this factor should have been corrected and changed to a 25 out of 25.

The third reason provided by Mr. Stilley to A&D as one of the reasons HERNANDEZ's proposal scored higher than A&D's sufficiently to award HERANDEZ the Contract in spite of the substantially lower Price of A&D's proposal involved the Contractor Qualification/ Past Performance sub-factor. *Attachments C, E & I.*

B. Contractor Qualification / Past Performance – Mr. Stilley indicated that A&D's score for this factor had been marked down due to a statement from one of A&D's references that there were several trouble calls with the system A&D installed for the client. This was the only reason given by Mr. Stilley for this sub-factor score being negatively affected.

In response to the third issue raised by Mr. Stilley, A&D asked Mr. Stilley if he was aware of whether or not Mr. Gazi had been asked if he was satisfied with A&D's performance on the project and if we would like to do business with them again. Mr. Stilley stated that he did not have that information, as he did not conduct the reference check. A&D then asked Mr. Stilley if he knew whether Mr. Gazi had been asked to explain the source of the trouble calls.

Mr. Stilley stated that he did not have that information, as he did not conduct the reference check. A&D then explained that the trouble calls were the result of an existing leak in the client's roof directly over the fire alarm control panel that was causing the trouble calls and that that had nothing to do with A&D. A&D explained that when Mr. Gazi was contacted by A&D Mr. Gazi informed A&D that he had given A&D a good reference.

Consequently, A&D's score for this factor should have been rescored. As this was again the only item that GSA noted as being deficient for this sub- factor, A&D should receive 25 out of 25 for this factor having met all of the requirements for this factor.

In Mrs. Leverette's email dated April 25, she states that the evaluators' re-scored A&D's proposal regarding the two panels submitted for the Quality of Equipment and Material (see attachment C, email from Mrs. Leverette). Mrs. Leverette goes on to state that after calculating the new scores, A&D's overall ranking was second. Mrs. Leverette failed to address the other two items that were incorrectly scored. The Installation Plan / Phasing Plan and the Contractor Qualification / Past Performance factors should have been re-scored as well.

A&D has requested a copy of the re-scored breakdown but GSA has refused to provide A&D the requested information. Attachment I & J.

GSA advised A&D that between Price and Non-price Factors GSA based its award criteria based on a 25% Price and 75% Non-price evaluation, which is 25 points for the Price Factor and 25 points for each of the Non-Price sub factors. This criteria is not stated in the Source Selection Factors. From the Bid Form both Price and Non-price Factors are of equal weight unless a different weighting is stated. Therefore, if the selection of HERNANDEZ was based upon a weighting of 25% to Price and 75% to Non-price then the bidders did not know the basis of the selection.

The Competition in Contracting Act of 1984, 10 U.S.C. § 2304(a)(1)(A) (1994), requires contracting agencies to obtain full and open competition through the use of competitive procedures, the dual purpose of which is to ensure that a procurement is open to all responsible sources and to provide the government with fair and reasonable prices. Western Roofing Serv., 70 Comp. Gen. 323, 325 (1991), 91-1 CPD ¶ 242 at 3.

The GSA's evaluation and award to HERNANDEZ was arbitrary, unreasonable and contrary to law; therefore, this Court should issue a Temporary Restraining Order and Preliminary Injunction.

3. **The Harm To A&D Outweighs Any Harm To The GSA**

The GSA, faces no irreparable harm if a Temporary Restraining Order and Preliminary Injunction are granted; but maybe a slight delay in the execution and performance of the contract to improve Fire Alarm System for the Laguna Niguel Federal Building. There is a fire alarm system in place as this is a Design/Build for a Replacement Fire Alarm System. On the other hand, A&D will definitely suffer irreparable monetary injury; that is, A&D will for certain lose the contract.

There is no reason why any current Contract performance cannot be suspended until this Court determines whether A&D is entitled to the declaratory relief it seeks.

Thus, a balancing of the hardships posed to A&D and the GSA by the prospect of a Temporary Restraining Order and preliminary injunctive relief demonstrates that A&D will suffer decidedly more severe harm if the Temporary Relief Order and Preliminary Injunction are denied than the GSA will suffer if the injunction if granted.

Since the balance-of-hardship test weighs heavily in favor of A&D, a Temporary Restraining Order and/or an injunction should be issued "if, at least, grave or serious questions are presented." Jones, supra, 704 F.2d at 715 (quoting North Carolina State Ports Authority v. Dart Containerline Co., 592 F.2d 749, 750 (4th Cir. 1979)); Chalk, supra, 710 - 711. A&D's objections to the GSA's rejection of A&D's post-bid protest is in violation of the Competition in Contracting Act of 1984 which constitute, at the very least, questions of a grave and serious nature. Thus, A&D is entitled to an injunction even without establishing a likelihood of success on the merits. Moreover, as the previous sections illustrate, A&D's claim is likely to be vindicated on the merits.

4. **The Public Interest Will Be Served If A Temporary Restraining Order/Preliminary Injunction Is Issued**

Finally, this Court must consider whether issuance of a Temporary Restraining Order and

Preliminary Injunction is in the public interest. Government agencies must comply with the laws, executive orders, and regulations under which they operate. Service v. Dulles, 354 U.S. 363 *(1957)*; Pan American World Airways, Inc. v. Marshall, 439 F.Supp. 487 (S.D. N.Y. 1977). The public interest is not served when an agency fails to follow its own regulations and fails to act in a lawful and honest manner. Art-Metal - USA, Inc. v. Solomon, 473 F. Supp. 1, 8 (D.D.C. 1978).

The public interest will served by the basic fact that the public may very well get a lower bidder, save the taxpayer $210,100 in procurement costs and have the necessary improvements furnished to the Design/Build Services for the Replacement of the Fire Alarm System for the Laguna Niguel Federal Building at a less monetary cost than it would otherwise be. In addition, to the financial benefit, the issuance of a temporary restraining order and preliminary injunction would serve the purpose of reinstating the public expectation, belief and trust on the public system and procurement contracts.

As herein it is demonstrated, the GSA has failed to comply with applicable laws and regulations. The GSA has abrogated the fundamental policy which underlies the Competition in Contracting Act of 1984; that the public is best served by free and open competition. To this end, it is essential that this competition, unless the national interest is truly threatened, be subject to fair and meaningful review. Accordingly, the public interest will be served by issuance of a Temporary Restraining Order and a subsequent preliminary injunction blocking the harmful results of the GSA's foreseeable unlawful conduct.

## CONCLUSION

For all the foregoing reasons, A&D respectfully requests that this Court issue a Temporary Restraining Order and Preliminary Injunction enjoining the GSA from issuing the Notice to Proceed, or, if a Notice to Proceed has already been issued and HERNANDEZ has commenced construction directing HERNANDEZ to suspend all performance, until such time as the Court makes a determination and rules on A&D's Request for Declaratory Judgment.

//

Dated: June 19, 2006

Respectfully submitted,

William L. Bruckner
BRUCKNER & WALKER
4550 Kearny Villa Road, Suite 209
San Diego, CA 92123
(858) 565-8300 Telephone
(858) 565-0813 Facsimile
Bill@BrucknerWalker.com

Attorneys for A&D Fire Protection, Inc.